MERRIMAN S. SMITH, Judge.
About eight o’clock p. m. on January 20, 1949, claimant, accompanied by his wife, was enroute home traveling east on U. S. route No. 60. At the intersection of route 60 and secondary state road No. 73, which is about three miles from Charleston in Kanawha county, claimant turned north onto state road No. 73, and after traveling about fifty feet he saw an avalanche of rock and dirt falling towards the highway on his right. He cut his car to the left to avoid being struck, but he was too late; a large rock struck the car, damaging it to the extent of $96.33, the actual cost of the repairs including towing, wrecker service and labor. •
The members of the court viewed the scene of the accident and found the conditions as follows: At the intersection of U. S. 60 and state road No. 73, a cut through the edge of a hill to the east was made by the state road commission in order to widen the road at this point. Route No. 73 is a twenty-foot *78 concrete highway running several hundred feet from the intersection, and since U. S. route No. 60 is one of the most heavily traveled highways in the state — running east and west from coast to coast — and this being a dangerous intersection, the state has built a concrete sidewalk about thirty feet along the east side of route No. 73 for pedestrians, the sidewalk being between and alongside the concrete road and the cut, which consists of a large, soft rock seam or ledge, supported only by soft shale and dirt which rises from the berm of the road and forms a precipitous cliff which overhangs the berm of the road.
The slide causing the accident in this claim was in January. About six months later, m July to be exact, when the court viewed the scene, another large rock was lying on the berm at practically the same point of the accident which occurred in January, and which had fallen only a few days before. There were large crevices in the seam of rock above, and unless proper steps to remedy the condition be taken by the state road commission other slides will occur, endangering the lives and property of motorists and pedestrians lawfully using the highway.
While the state is not a guarantor of the safety of the highways, on the other hand it should not permit and perpetuate a hazard which endangers the life, limb and property of the traveling public. This is a short cut and at very little expense, time and labor this flagrant and unusual hazard could be eliminated at least from being dangerous to the users of the highway. It is impossible to prevent slides due to erosion and changing weather conditions. However, at this particular cut, by blasting away a few feet into the hill, the danger of large rocks falling on the highway could be eliminated under normal slide conditions, since by thus widening the berm the rock and debris would fall on the berm and not reach the concrete surface of the highway along which the public travel. The existing hazard is so exposed and obvious even to the average layman that there is no excuse for experienced members of the state road commission, whose duty it is to provide against such dangers, not to take proper steps to remedy such a hazard *79 which has existed since the construction of the cut, and which still exists.
It has been repeatedly held by this court that the state is not a guarantor of the safety of the highway. Earl Hutchison v. State Road, 3 Ct. Claims (W. Va.) 217. Clark v. State Road, 1 Ct. Claims (W. Va.) 230. Presson v. State Road, 4 Ct. Claims (W. Va.) 92.
The Supreme Court in State ex rel. Adkins v. Sims, Auditor, 46 S. E. (2d) 81, upholds the law that the state is not a guarantor of the safety of the highways. However, Judge Fox in his opinion states:
“We do not mean to say that situations may not arise where the failure of the road commissioner properly to maintain a highway, and guard against accidents, occasioned by the- condition of the road, may not be treated as such positive neglect of duty as to create a moral obligation against the State, for which the. Legislature may appropriate money to pay damages which proximately resulted therefrom.”
The majority of this court is of the opinion that the instant claim presents such outstanding negligence on the part of the employes, of the state road commission as to create a moral obligation upon the state for which in equity and good conscience it should compensate the claimant for damages sustained, which damages proximately resulted from such wanton negligence. Furthermore, in the. Adkins case, supra, there was a degree of contributory negligence on the part of the claimant, whereas in the instant case there is not a scintilla of evidence that would compute contributory negligence on the claimant.
It is unfortunate, however, that aggrieved claimants with meritorious claims under all rules of law, equity and good conscience, should he denied awards and be subjected to the political ambitions and unreasonable attitude of a state auditor who sets himself up above the profound decisions of the Supreme Court, the laws of the majority members of the State Legislature and the studious and conscientious awards *80 handed down by the State Court of .Claims. A little power in the hands of some oftentimes reaches out like an octopus and inflicts its oppression on the rights of the majority and of the minority, the just and the unjust alike.
The majority of this court recommends the payment of ninety-six dollars and thirty-three cents (S96.33) to claimant Dalton Spradling, and an award is hereby granted.